(Decided June 24th, 1858.)

----

# Heirs and Terre-Tenants of Samuel Miller, *vs.* The State, use of Lewis Fiery.

An act of Assembly was passed, authorising a county court to grant an appeal *to the plaintiff*, in a case in which the judgment was in *favor of the defendant*, and to incorporate into the record the same exceptions which had been taken in *another* and similar case, tried in the same court, an appeal in which was then pending. The exceptions were accordingly

Miller's Heirs & Terre-tenants, *vs.* State, use of Fiery.

signed, and the case prepared for the Court of Appeals, but before the record was sent up, the *other case* was reversed and sent back under *procedendo*, and tried again and *new exceptions* taken. An *agreement* was then made by the parties to *reinstate* the *first case*, in order that these new questions might be raised in this case also, and it was "*agreed*, that if the proceedings of the county court in signing the exceptions, should be deemed by the Court of Appeals void, by reason of the *unconstitutionality* of the act of Assembly by which they were authorized to be signed, *then the appeal in said case shall be dismissed*, otherwise it shall be heard and determined on the questions of law raised in the *other case*." The case was reinstated and a verdict and judgment *rendered for the plaintiff*, and the *defendant* appealed, and the record *with the above agreement* sent to the Court of Appeals, which decided the act *unconstitutional* and *dismissed the appeal*. The plaintiff then attempted to enforce the last judgment in his favor by *seire facias*, insisting that the *dismissal of the appeal* left that judgment in full force. This attempt the defendant resisted, both by plea to the *sci. fa.*, and by motion to strike out the judgment, insisting, that by the above agreement the judgment was to be *void*, if the act of Assembly was declared unconstitutional, HELD:

That this defence was not the subject matter of a plea *at law* to the *scire facias*, but that the defendant is entitled to relief against the judgment *in equity*, the design of the *agreement* being, to prevent the plaintiff from proceeding on his judgment, if the act of Assembly was declared unconstitutional.

APPEAL from the Circuit Court for Washington county.

These two appeals argued and decided together were taken by the appellants, the *first*, from the refusal of the court below on *motion to strike out a judgment* against Samuel Miller, and the *second*, from the *fiat* upon a *scire facias* sued out by the appellee to revive the *same judgment*.

1*st. Appeal.* To the November term 1841, of Washington county court, *two suits* were brought in the name of the State, for the use of Henry Fiery and Lewis Fiery, respectively, against Samuel Miller. Both suits were on the same guardian's bond as the cause of action, Miller being the surety therein of the father, and guardian of Henry and Lewis Fiery. The defendant pleaded *non est factum*, in each case, and trials took place in *both* at November term 1843. The case of Henry was first tried, and certain questions of law decided by the court against him, to which exceptions were taken at the time. After the jury retired in Henry's case, that of Lewis was taken up, and the same questions of law arising, were de-

cided by the court in the same manner, but no exceptions were taken by Lewis, his counsel, as is alleged, being under the impression that no objection would be made to taking them when the cause was finally decided; in other words, that one case would abide the result of the other.

In the case of Lewis, the jury returned a *verdict for the defendant*, and the plaintiff moved for a new trial. In that of Henry, the jury being unable to agree were discharged. Both cases were then continued, Henry's as it originally stood on the docket, and Lewis' under motion for a new trial, till November term 1844, when Henry's case was again tried, the same points arose, were decided and exceptions taken thereto, as at the former trial, and at the same term the court overruled the motion for a new trial in the case of Lewis, and rendered *judgment for the defendant*. In Henry's case the exceptions were signed without objection, and the record transmitted to the Court of Appeals, but in the case of Lewis, upon application to have similar exceptions signed to those in the case of Henry, the defendant's counsel objected and the court refused to interfere. Lewis being thus unable to get his case to the Court of Appeals, applied to the Legislature for relief, and the act of 1845, ch. 358, was passed, the provisions of which are fully stated in the opinion of *Judge Eccleston* in this case.

After the passage of this act a rule was laid on the defendant, to show cause why its provisions should not be carried into effect. The defendant showed cause, insisting, among other reasons, that the act was unconstitutional, and various affidavits as to what transpired at the trial of the cause, were taken and filed on both sides, and the court at November term 1846, made the rule absolute, and in compliance with the provisions of the act, signed and sealed bills of exception, similar to those in the case of Henry, "the court being of opinion from the affidavits filed in the case, that the points of law decided and the instructions given, in the case of the State of Maryland use of Henry Fiery, against Samuel Miller, are substantially the same with those decided in the case of the State of Maryland, use of Lewis Fiery, against Samuel Miller, and that the plaintiff lost his right to appeal, at the proper time for taking the

same by a misunderstanding of the counsel engaged in the case," and directed the case *thus prepared* to be sent to the Court of Appeals.

In the mean time, the appeal in Henry's case had been decided by the appellate court, (3 *Gill,* 335,) the judgment *reversed,* the case sent back under a *procedendo,* and tried *de novo* at November term 1847, at which trial new points were raised and decided by the court, and exceptions taken by the defendant, and the verdict and judgment being in *favor of the plaintiff,* the defendant appealed. At the same term, (November term 1847,) the record in the case of Lewis, *prepared as above stated,* not having been transmitted to the Court of Appeals, an *agreement* was made by the counsel of the parties and filed in the case, which after *reciting* that bills of exception had been signed and sealed by the court in accordance with the act of 1845, ch. 358, and setting out the same in full, proceeds thus:

"And whereas, after said bills of exception were thus signed by the court, it was agreed by the counsel for plaintiff and defendant in the above cause to *reinstate* said cause upon the docket, in order that the new points and questions of law, which might arise in the similar case of the State, use of Henry Fiery, against the said Samuel Miller, which had previously been sent down from the Court of Appeals upon *procedendo,* might also be raised and decided in the case now in question, wherein the State, use of Lewis Fiery, is plaintiff, and the said Miller defendant, and accordingly said cause *was so reinstated,* and stands No. 51 trials, November term 1847, of Washington county court, for trial as aforesaid. It is therefore *agreed* between the counsel for the parties to said suit, that if the proceedings of Washington county court, in signing and sealing the bills of exceptions herein set forth, shall be deemed by the Court of Appeals of Maryland *void, in consequence of the unconstitutionality* of the act of Assembly by which said bills of exception were authorised and directed to be signed and sealed by Washington county court as aforesaid, *then the appeal in said cause shall be dismissed,* otherwise it shall be heard and determined upon the questions of law, which are to be raised

and decided at the trial of the cause, at the present term of Washington county court, and which are similar to the questions presented in the case of the State, use of Henry Fiery, vs. the said Samuel Miller: And it is further agreed, that this case shall abide the result or decision of the Court of Appeals, in the case of the State, use of Henry Fiery, vs. Samuel Miller, upon the bill of exceptions of the defendant, in which last mentioned case an appeal has been taken at the present term of this court."

The cause being thus *reinstated*, was, as the record shows, regularly tried before a jury, at November term 1847 of Washington county court, and a *verdict and judgment* rendered *in favor of the plaintiff*, for $1484.88. From this *judgment* the *defendant appealed*, and the case *with the exceptions and agreement* above stated, was sent to the Court of Appeals, and at its December term 1849, that court decided, that the act of 1845, ch. 358, *was unconstitutional*, and *dismissed the appeal*, remarking that "the *agreement* of the counsel in the cause, requires nothing more of this court than the expression of its opinion on the constitutionality of the act of Assembly," (8 *Gill*, 145,) and at the same term *affirmed the judgment* on the appeal in the case of Henry Fiery, (8 *Gill*, 141.)

Afterwards, on the 17th of September 1852, the plaintiff Lewis Fiery, issued a *scire facias* against the heirs and terre-tenants of the defendant Samuel Miller, (who had in the mean time died,) to revive the *judgment of November term* 1847, insisting, that by the *dismissal of the appeal* of the defendant from that judgment, the same was left in full force and effect. To this writ the heirs and terre-tenants appeared and filed pleas, and then moved the court for a rule upon the plaintiff, to show cause why said judgment should not be *stricken out, vacated or entered satisfied*, alleging in their petition for the rule, that by the *agreement* of counsel above set forth, and the distinct understanding of the parties thereto, it was agreed, that if the act of Assembly therein referred to, should be considered void by the Court of Appeals, then the appeal in the case should be dismissed, and the bills of exception signed by Washington county court, by virtue thereof, and *all the pro-*

*ceedings of said court under said act, and with a view to carry the same into effect, should be deemed and considered utterly null and void,* and that the *judgment* entered for the purpose of *reinstating* said cause under said agreement, *was one of the proceedings* of said court, in carrying into effect said act of Assembly, and which, if the said act should be declared unconstitutional by the Court of Appeals, was, by the said agreement, *to be considered null and void,* and that said Lewis Fiery, in violation and fraud of this agreement, has issued a *scire facias* on said judgment.

The plaintiff showed cause, insisting, among other things, that said judgment by virtue of the dismissal of the appeal aforesaid, now stands in full force, and is unreversed, and in no manner vacated or annulled by any proceeding of the Court of Appeals, and that it is not affected or annulled by the construction and legal operation of the aforesaid agreement; that the trial, verdict and judgment at November term 1847, were not had in pursuance of the act of 1845, ch. 358, nor were they necessary to accomplish the objects and purposes of that act; and that by said agreement it was provided, that the case of Lewis Fiery *should abide* the *decision and result* of the case of Henry Fiery, upon exceptions then taken in the trial of said last mentioned case under the *procedendo,* and said cause having been *affirmed* by the Court of Appeals, the case of Lewis Fiery is to stand and be enforced as if the *judgment therein* had also been *affirmed.*

The court, *(Perry J.,)* refused to allow the motion or to vacate the judgment, and from this decision the defendants appealed.

*2nd. Appeal.* The *scire facias* having been issued as above stated, returnable at November term 1852, was duly returned served, and the defendants, at March term 1853, filed several pleas thereto, relying substantially upon the defences which they subsequently relied upon in their motion to *strike out.* At the following July term, the plaintiff moved the court to set aside these pleas, upon the grounds that being pleas *in abatement,* they were not filed by the rule day, and were defective for duplicity, and were not verified by affidavit, and also moved

the court to render judgment in default of a plea. The court after argument, ordered the pleas to be set aside, but refused the motion to enter judgment by default. The defendants then moved for leave to amend their pleas, which was granted. To this refusal to enter judgment, and to the granting of the leave to amend, the plaintiff *excepted*.

The defendants then, in accordance with the leave to amend, filed two pleas, one of *nul tiel record*, upon which issue was joined by the plaintiff, and the other a special plea in bar, setting out and relying upon the defences heretofore stated. To this latter plea the plaintiff filed a *special demurrer*, upon the ground, 1st, that it does not fully and specially set forth the record and matters of record, upon which it purports to be founded; 2nd, because it concludes with a verification *to the country*, whereas it should have concluded with a verification by *the record*, all matters alleged and stated therein, being matters of record and provable by the record only; and 3rd, because it does not allege and set forth the matters and things therein contained with sufficient certainty.

The issue upon the plea of *nul tiel record*, was decided by the court in favor of the plaintiff, and the court also sustained the demurrer to the second plea, and gave judgment of *fiat* upon the *scire facias*. From this judgment the defendants appealed.

The cause was first argued before LE GRAND, C. J., EC-CLESTON and TUCK, J.; and upon motion of the appellee a reargument was ordered and had before LE GRAND, C. J., EC-CLESTON, TUCK and BARTOL, J.

*Wm. Price* for the appellants:

The facts are, a suit was brought against Samuel Miller on a guardian's bond. It was tried at November term 1843, and verdict *for defendant*. A motion was made for a new trial, which was overruled at November term 1844, and *judgment* on the verdict. In this suit there were no bills of exception, and the case *as it stood* was finally settled in favor of the defendant. But another suit was tried against Miller upon the

same bond, in which trial there were bills of exception and points reserved. These points were decided in favor of the plaintiff, in the Court of Appeals. It was natural that Lewis Fiery, who lost his suit for want of bills of exception, should be desirous of introducing stale exceptions into his case. This was accomplished by means of an act of Assembly. This act does not say that Washington county court shall grant Lewis Fiery a new trial, but requires the court to grant him an appeal, and, that he may have something to go upon in the Court of Appeals, requires the court below to introduce into his case the same bills of exception which had been taken in the other case alluded to. The court below, supposing the act to be constitutional, obeyed it, and out of this act, and this view of it by that court, all the difficulties in the case have arisen.

The proceedings under this act resulted in a judgment against Samuel Miller, at November term 1847 of Washington county court, and the object of these proceedings and of the judgment, was to test the constitutional validity of the act of Assembly. If the law was constitutional, the object was to let the judgment stand and abide the event of the other suit. If the law was unconstitutional, the object was to dismiss the appeal and the whole proceeding to be considered void. The proceedings and the judgment were under an *agreement* entered into by the parties, and signed by their counsel. It was a judgment therefore *upon terms*, and the terms are set out in the agreement. By reference to the petition to strike out, and the plea to the *sci. fa.*, which is demurred to, and therefore *admitted*, it will be found that the whole case is admitted. It is thus admitted, that the whole controversy was to depend upon the constitutional validity of the act of Assembly; that if the act was void the judgment was to be void; that the act was declared unconstitutional by the Court of Appeals; that if the act should be void all the proceedings had with a view to carry the act into effect should be void also; and that the judgment was one of *such* proceedings; that if the act should be declared void the appeal should be dismissed, and when dismissed all the proceedings below, including the judgment, should be null and void, and that the appeal was dismissed according to the agreement of the parties.

The question is, what is the power of the court in such a case? If a judgment is confessed by agreement of parties upon terms filed, has the court power to hold the parties to the performance of the terms? The act of 1787, ch. 9, sec. 6, has no application to a question like this. That act provides, that where a judgment shall be set aside for fraud, deceit, surprise or irregularity *in obtaining the same*, the court may direct continuances to be entered from the term when the judgment was rendered to that at which it shall be set aside. It is not pretended there was any fraud or deceit *in obtaining* this judgment; on the contrary, it was entered by consent and was just what it was intended to be. By the terms agreed upon, and filed, it was to be a valid binding judgment, if the act of Assembly proved to be constitutional, and a void judgment, if the act proved to be unconstitutional. It has turned out that the act was unconstitutional and the judgment therefore became void. Has the court power to declare it void, or is the court compelled to enforce it knowing it to be void? It must not be overlooked, that in contemplation of law, the entry of this judgment was *the act of the court;* the settlement of the terms upon which it was entered *was the act of the court.* Has the court, therefore, power to enter a judgment upon terms, and no power to see the terms performed? Of the power of the court to enter a judgment upon terms there is no doubt. The power to see those terms carried out in good faith, belongs to the *general equitable jurisdiction of courts of law.*

*Kerr on Actions at Law*, 29, in 81 *Law Lib.*, derives the equitable jurisdiction of courts of law from two sources, 1st, from the statutes of jeofails, and 2nd, from the inherent authorities which every court possesses over its own proceedings. This case is within the *second* branch of this jurisdiction as thus described by Mr. Kerr, which, he says is necessarily more flexible than the authority to amend the proceedings conferred by statute. It suits itself to the ever varying circumstances presented in different suits, and to explain its *nature* he mentions a few of the circumstances in which it is exercised. *(Kerr on Actions at Law*, 34.) "In short," says this writer, "where the courts perceive that justice requires the interference

of a court of equity, and that a court of equity would interfere
in every such case, in order to save the parties the expense of
proceeding to a court of equity, they will give the parties the
aid of their equitable jurisdiction, to enable them to effect the
same purpose." *Kerr*, 36, citing, *Phillips vs. Clagett*, 11
*Mees. & Wels.*, 84, which fully supports the doctrine of the
text.   It is said by *Holt, C. J.*, in 1 *Salk.*, 400, that "where a
judgment is confessed upon terms, it being in effect but a con-
ditional judgment, *the court will lay their hands upon it and
see the terms performed.*   But where a judgment is acknowl-
edged absolutely, and a subsequent agreement made, this does
in no way affect the judgment and the court will take no no-
tice of it, but put the party to his action on the agreement."
The doctrine of *Holt* would, no doubt, be considered sound
and sensible, according to the notion concerning the powers
of courts which prevailed in his day.   And if a judgment were
confessed, which at the time was intended to be absolute, but
which, from circumstances arising afterwards, the parties agreed
to convert into a conditional judgment, and the party should
in violation of such agreement and against good faith, attempt
to enforce the judgment, there is but little doubt that the court,
in *Lord Holt's* time, would refuse to interfere and put the in-
jured party to his action on the agreement.   In such a case
the judgment would be the act of the court, the agreement
making it conditional, the act of the parties *in pais;* and ac-
cording to the strict rules which then prevailed, it would be
held, that a matter of record could not be controlled by a pro-
ceeding *in pais.*   But at the present day, it is not to be sup-
posed that the court would allow its process to be used against
good faith.   If a defendant, for instance, should pay the judg-
ment debt in full, and the plaintiff should afterwards attempt
to enforce the judgment by execution, would not the court lay
their hands upon the case and prevent the fraud ?   In such
a case the old remedy was by *audita querela*, a proceeding by
which a defence arising after verdict and judgment is made
available to the defendant, *(Kerr*, 307.)   The nature of an
*audita querela*, is well explained in *Giles vs. Hutt*, 1 *Wels.
Hurls. & Gor.*, 701, where it is said, that an *audita querela*

lies to avoid execution of a judgment, because after the judgment the defendant had paid the entire sum, for an *audita querela* "is not only a *suit at law* but *in equity also*." But the indulgence now shown by the courts in granting summary relief, upon motion, in cases of such evident oppression, has almost rendered useless the writ of *audita querela*, and driven it quite out of practice, *(Kerr*, 307.) It is in exercise of its equitable jurisdiction that a court of law will set off one judgment against another, upon application, after both judgments have been rendered. This is a power incidental to courts of equity, and has been long exercised by them exclusively; for it is only within a few years that courts of law have undertaken to set off one judgment against another; *per Spencer J.*, 14 *Johns.*, 75, *Simson vs. Hart*. *Magruder, J.*, in *Annan vs. Houck*, 4 *Gill*, 333, says, that courts of law have always exercised this power. It is an incident, it is said, to the power which courts have over their suitors. The power which a court exercises over its suitors, can only be in compelling them to act justly, and especially in restraining them from making a fraudulent use of the process or proceedings of the court. But the ground upon which we seek to set aside this judgment, is not for any defence occurring after the entry of the judgment, but by reason of a condition annexed to it at the time of its rendition. This judgment was the act of the court, the terms were annexed to it by the court, and the parties must look to the court to carry out its own terms. The court would enforce the terms and vacate the judgment, even if the plaintiff had made no attempt to violate the agreement, much more will the court interfere where the party is actually proceeding, against good faith, to compel payment of a judgment which he knows is void. *(Kerr*, 38.) The interference of the court is *ex debito justitiæ*. 3 *Chitt. Gen. Pr.*, 75.

As to the facts of the case: The court, as I am informed, have found some difficulty in ascertaining from the record, whether the judgment at November term 1847, was confessed, in pursuance of the agreement. Some difficulty is said to arise from the fact, that a jury was empannelled and a verdict

28    v. 12.

taken under the direction of the court.   The true history of the matter is simply this, that after the agreement was signed and filed, the court took the case into its own hands, and had a jury empannelled, as the best way of introducing the bills of exception, which they copied from the other case as directed by the act of Assembly.   The court also directed that a verdict should be rendered, so that, as the case in the event of the act being constitutional, was to abide the event of the other suit, the amount of the judgment might be truly ascertained, and nothing left open for dispute thereafter; all this was the proceeding of the court to which the counsel gave his assent. The course of proceeding adopted by the court, has introduced some little confusion into the record, but the penalty of the irregularity should not be visited upon the party.   There can be no doubt, however, that the judgment and the appeal from it, were in pursuance of the agreement.   It was under the agreement that the constitutionality of the act was tested before the Court of Appeals.    It was under the agreement that the decision of the court below was reversed, and still the appeal dismissed, as is manifest from the concluding sentence of the court's opinion, in 8 *Gill*, 150, and in the record in that case the agreement is set out.   It was not denied *then* that the judgment was under and by virtue of the agreement.   But for the agreement the decision would have been reversed and the judgment below annulled.   And it would be hard, that the defendant should be deprived of his reversal in that case because of the agreement, and the judgment be given against him in this because there was no agreement.

The question may be asked, why the appeal should be *dismissed* in case the act was unconstitutional, instead of the judgment reversed, which would be the natural course?   The answer is, that it is difficult now to say what the reason for this stipulation was.   The agreement was drawn by the counsel for the plaintiff, and the arrangement made upon his suggestion.   The agreement provides for two contingencies, the one that the act should prove constitutional, and the other that it should prove unconstitutional.   If constitutional the case was to remain in the Court of Appeals, where it should be

heard and determined on the questions of law raised in the other case, and it might, therefore, naturally occur to the draftsman of the agreement, that it should be dismissed if the act were unconstitutional. But, whatever may have been his reasons, one thing is certain, that it was not the intention of the parties that the judgment below should be binding upon the defendant, if the foundation of the judgment should be taken from under it. The agreement is imperfect, in not specifying more particularly what proceedings were to be had in the court below should the act be unconstitutional. But it recognises two things as true, if the act should be declared unconstitutional; 1st, that the act was void; and 2nd, that the proceeding of the county court under it was void. It recognises moreover the *dismissal of the appeal*, as the sign and token that the act was void and all the proceedings under it void, and the amount of the whole is, that if the *appeal* was *dismissed* under the agreement the case should stop and go no further. If the counsel had been asked: "Do you intend if the Court of Appeals pronounce the act and the proceedings of the court below all void, to proceed upon the judgment as binding upon the defendant? he would have considered the question as intimating a doubt of his fairness and regarded it as offensive.

The court in this case however, sit as a court of equity, and will look at the substance of the case: and *if it is satisfied* that this is a fraudulent attempt by this plaintiff to enforce a void judgment against the defendant, and more than all to make the court instrumental in the perpetration of the fraud, the court will lay their hands upon the proceeding and put a stop to it. The court will not be led away from the great purpose of vindicating its own honor, by any little technical objection of the party. The question is, is the court satisfied of the facts of the case? And it will look at the facts in the same liberal view as if sitting in equity. 11 *Mees. & Wels.*, 89, *Phillips vs. Clagett*. 23 *Eng. C. L. Rep.*, 221, *Martin vs. Martin*. Again, the plea to the *sci. fa.* contains this averment: "By virtue of which said decision of the Court of Appeals, and by force of the said agreement between the parties,

in conformity with which the said appeal was dismissed, the said judgment, at November term 1847 of Washington county court, being the same mentioned in the said writ of *sci. fa.*, became and was rescinded, annulled and made utterly void, and of no effect." And this plea is demurred to, and therefore the effect of the agreement so averred is *admitted.*

It appears to me that the proper course will be, to strike out the judgment upon the application to the court for that purpose, and then the *scire facias* falls of course, there being no judgment to support it.

*R. H. Alvey* for the appellee:

Inasmuch as there had been an appeal prosecuted from the original judgment of November term 1847, which was asked to be stricken out, and the time elapsed within which an appeal could be taken from such judgment, this appeal being from the refusal of the court to strike out this judgment, will not lie, and ought therefore to be dismissed. 12 *G. & J.*, 353, *Washington vs. Hodgskin.* 9 *Gill*, 242, *Cushwa vs. Cushwa.* 6 *H. & J.*, 151, *Hawkins vs. Jackson.* But if the appeal does lie it is then insisted:

1st. That there being a regular verdict of a jury and a judgment thereon for the plaintiff, every intendment and presumption must be indulged in their favor, and according to well established principles, a solemn judgment will not be readily or lightly interferred with. 2 *H. & J.*, 41, *McMechen vs. Mayor & C. C. of Balto.* 2 *H. & G.* 374, *Munnikuysen vs. Dorsett.* The trial at November term 1847, when the original judgment was obtained, was not had in pursuance of the act of 1845, ch. 358, and of consequence, the appeal from that judgment was not taken in pursuance of that act. The act did not direct or authorise a new trial, but only the signing and sealing of bills of exception, similar to those in the case of Henry Fiery, and the court, after taking the preliminary proceedings, at the previous term, had complied with the directions of the law by signing and sealing the exceptions. It was by agreement, independent of the act of Assembly, that a new trial was had, and by agreeing to such new trial the defend-

ant waived and abandoned all the benefits and advantages which he might have taken from the previous verdict and judgment in his favor. The new trial not being had in pursuance of the act, and the appeal actually taken not being from the judgment contemplated by the act, which was a judgment in favor of the defendant, but from a totally different judgment, and one rendered subsequent to the passage of the act, the constitutionality or unconstitutionality of that law had, in fact, nothing to do with the validity or legality of the judgment from which the appeal was taken. The constitutional question, in regard to the act, was referred to the Court of Appeals by agreement, and without regard to any legal objection to the judgment from which the appeal was taken. The Court of Appeals having, in pursuance of the agreement, dismissed the appeal, of course the judgment was left standing in the court below unaffected by the appeal, and as a legal, subsisting, efficient judgment. Upon the dismissal of the appeal the case was left to abide the result of the case of Henry Fiery, which was, at the same term of the appellate court, decided in favor of the plaintiff.

2nd. After all the proceedings which were had upon the judgment of 1847, and of which the defendants were cognizant, and after the long time which has elapsed before the motion to strike out was made, the defendants must be taken as having acquiesced in the regularity of the judgment, and as having waived all ground of objection for which relief could have been had if the motion had been made in due time, and they ought not now to be permitted to question the judgment upon any such ground. 2 *Arch. Pr.*, 225, 226. 1 *Dow. & Ry.*, 181, *Sloman vs. Gregory*. *Andrews,* 296, *Keate, et al., vs. Watson*. 1 *Salk.*, 402.

3rd. The judgment, but not the verdict of the jury, remained under the control of the court, and subject to alteration and amendment, and even to entire change during the term at which it was rendered; but after the term elapsed and the judgment became enrolled of record, then the solemn and conclusive nature of the record restrained all interference with it, (*Coke Litt.*, 260,) and the court could only set aside or strike

it out for fraud, deceit, surprise or irregularity, in the *obtention and rendition* of it. *(Act of* 1787, *ch.* 9, *sec.* 6.) There is no allegation or pretence there was either fraud, deceit, surprise or irregularity, in the obtention or rendition of this judgment, but the complaint is, that issuing the *scire facias* thereon is a fraud and surprise upon the defendants.

4th. The defendants having appeared to the *sci fa.*, taken various proceedings, and *pleaded* as a bar and full defence thereto, all the facts specially set forth in their application for the rule to strike out, the *sci. fa.* with this defence to it being still pending in court at the time of such application, it is insisted they could not prosecute two such modes of defence, at the same time, in order to defeat the judgment. The pendency of the *sci. fa.* and of this plea to it in bar, was sufficient reason of itself for refusing to make the rule absolute. 2 *H. & G.*, 374, *Munnikuysen vs. Dorsett.*

5th. Whatever interpretation may be placed on the agreement of the 10th of December 1847, as it was entered into before the trial and judgment, it cannot be made to operate a defeasance of the judgment. The judgment being of the higher nature cannot be controlled or rendered nugatory by the agreement, nor would the court permit the integrity and the solemn and conclusive verity of their judicial proceedings to be controlled, and destroyed, by agreements of parties made previous to invoking judicial action. To sanction such a practice would be to render our courts tribunals for the trial and decision of mere experimental abstract propositions, without reference to the legal consequences to the parties or the rights established or obligations imposed, which always follow the registration of solemn judicial judgments. *Cro. Eliz.*, 837, *Gage vs. Shurland.*

6th. By agreeing to reinstate the case on the docket, and to the new trial which took place at November term 1847, the defendant clearly waived and renounced all benefit and advantage of the verdict and judgment previously rendered in his favor, and upon reinstating the case, the former verdict and judgment became vacated and were thereby rendered nullities. By the agreement and reinstating the case on the docket for

Miller's Heirs & Terre-tenants, *vs.* State, use of Fiery.

retrial, the whole case was again opened as if no trial had taken place. Now, if the court should think that this judgment of 1847 should be stricken out and set aside, then it will be necessary that the case be brought up on the docket of the court below by regular continuances, and it will then stand for trial again. *Act of* 1787, *ch.* 9, *sec.* 6. 2 *H. & G.*, 374.

7th. And lastly, this being an application to the equitable powers of the court, the plaintiff insists, that having originally lost his just claim against the defendant by reason of a mistake or accident, if by reason of another mistake or accident his rights are restored to him, and he is placed where he would have been but for the original mistake or accident, upon no principle of equity or justice can the court be required to correct the one without at the same time correcting the other, and placing both parties where they originally stood before the occurrence of either. Upon principles of law, the mistake or accident cannot be relieved against, and if the equity powers of the court are invoked, then justice as well as principle would require the defendants to correct the first or original mistake or accident whereby the right of appeal was lost, before they ask to have the second or last mistake corrected. 1 *Story's Eq.*, secs. 64, *c*, 64, *e*, 106. 8 *Md. Rep.*, 427, *Anderson vs. Tydings*. All the circumstances surrounding the case show an equitable and moral consideration for making such an agreement as that of the 10th of December 1847, and that its true construction is that given to it by the appellee.

As to the appeal in the *scire facias* case: The judgment of the court below upon the plea of *nul tiel record,* is not before this court for review, as the defendants took *no exceptions* upon the trial of that issue. 1 *H. & J.*, 463, *Dorsey vs. Whetcroft.* 3 *G. & J.*, 24, *Ayres vs. Kain.* The demurrer to the second plea was special, but it performs the office of a general demurrer also. 10 *G. & J.*, 334, *Brown vs. Jones.* This second plea, when tested by a special demurrer, is wholly insufficient in form. All the matters set forth in it are matters of record, the act of Assembly included. This being so all such matters should have been referred to by the *prout patet per recordum,*

and the omission to do so is fatal. There could be no issue framed on this plea triable by jury, all the matters being of record, and therefore, the offer to verify should have been by the record, and the omission thus to conclude this plea is fatal to it. *Com. Dig. Pleader, (E.,)* 29. 4 *G. & J.*, 353, *Shafer vs. Stonebraker.* But however the question of form may be disposed of, the plea when tried on general demurrer forms no bar to this *scire facias.* Before it can be regarded as a bar, it must be adjudged to contain a substantial and conclusive answer to the action, (2 *G. & J.*, 430, *Karthaus vs. Owings,)* and the question is what is admissible or what can be well pleaded as a bar to this *sci. fa.*, because the demurrer only confesses, for the sake of the legal issue, matters of fact well pleaded, *( Com. Dig. Pleader, ( Q.,)* 5, *( Q.,)* 6, *Coke Litt.*, 72, *A,)* and not such as are immaterial, repugnant or improper. 1 *East.*, 634, *Nowlan vs. Geddes.* The plea in question sets up matters antecedent to the judgment recited in the *scire facias*, as an answer to the writ. It seeks, in fact, to have the whole proceedings upon which the original judgment is based, re-opened and reviewed by this court, and the judgment reversed or vacated. It allows to the judgment recited in the writ, no sort of sanctity or verity whatever, notwithstanding it is a solemn judgment of record rendered by a court of competent jurisdiction and authority. Those matters which, in legal contemplation, are merged in the original judgment, are attempted to be made matters of defence to this action. Can it be done? I contend it cannot upon any principle known to the law. The proceedings upon which the judgment was rendered, and the judgment itself, are beyond question or dispute on *scire facias.* Every thing antecedent and relating to the original judgment are concluded by it, and the only way in which the judgment could have been reviewed and corrected for error in it, was by an appeal or writ of error prosecuted therefrom. There is no maxim of the law of greater universality, or to which the courts have adhered with greater perseverance and more general benefit, than that *res judicatæ pro veritate accipiunter.* Parties are never permitted to question or to aver against the verity of the record.

*Coke Litt.*, 260.  2 *Barn. & Adol.*, 362, *King vs. Carlile*. And there is no case where this general principle is more directly applicable than in the case of a *scire facias*, where the defence thereto involves the existence and legality of the judgment upon which the writ issues.  And so we find it laid down in books of the highest authority, that no matter can be pleaded to a *scire facias*, contrary to the title upon which the original recovery was obtained, nor which proves the original judgment erroneous and voidable.  2 *Inst.*, 470.  5 *Sergt. & Rawle.*, 65, 68, *Cardesa vs. Humes*.  As to the manner in which a record is to be treated in pleading, and the solemnity with which it is to be regarded.  *Chitty on Pleading*, 370, (10 *Amer. Ed.*,) says:  "The validity of these (records,) cannot, in general, in pleading, be impeached or affected by any supposed defect or illegality in the consideration or transaction on which they were founded; nor can there be any allegation against the validity of a record except by a writ of error, and consequently, it is not necessary to state the circumstances or consideration on which the record was founded."  See also *Green vs. Ovington*, 16 *Johns.*, 55.  This plea seeks to do the very thing which these authorities say cannot be done.  The principle sustained by the authorities just cited, has been sanctioned and applied to a considerable extent by this court, in *Kemp vs. Cook*, 6 *Md. Rep.*, 305, and *Moore vs. Garretson*, *Ibid.*, 444.  See also 3 *How.*, 57, *Dickson vs. Wilkinson*. If I am right in the position, that all matter existing before the judgment was merged in it, and that no matter can be pleaded to this *scire facias* as a bar to it, that had an existence antecedent to the recovery of the original judgment, then all other considerations which might arise under this plea are excluded; and feeling confident that I am right in so insisting, I submit the case.

LE GRAND, C. J.—My opinion is, the motion ought to have prevailed.  When the case was originally tried, in Washington county court, the judgment was in favor of the defendant, Miller.  There being no exceptions, that judgment was a conclusive bar to the claim of the plaintiff.  In

29    v. 12.

this state of case, application was made to the Legislature for its interference, and, in pursuance of the request, the act of Assembly was passed.  It authorized the opening of the case, and the incorporation into its record of exceptions which had been taken in another case, and upon the validity of which the Court of Appeals had pronounced.  By agreement of counsel, the judgment which had been entered in this case, in favor of the defendant, was stricken out, and one entered in favor of the plaintiff, the agreement providing, that if the Court of Appeals should declare the act of Assembly constitutional, then the substituted judgment should remain in full force, but if it should be of opinion that the act was unconstitutional, then the appeal was to be dismissed. The court held the act to be unconstitutional, and, in conformity with the agreement, dismissed the appeal.  This left the judgment against the defendant in full force.  To cause it to be stricken out, and to restore the record to its original condition, is the object of the motion which has been made by the appellant.

The act of Assembly authorizes the court to strike out a judgment which has been entered because of fraud, accident or mistake.  This, in my judgment, is a clear case of mistake. The agreement did not clearly, or rather did not as fully as it should have done, express the real intention and purpose of the parties.  To give to it the construction contended for on behalf of the appellee, is, in my opinion, to stultify the parties to it.  To my mind, it is perfectly clear that it was the purpose of the parties to have submitted to the Court of Appeals the question of the *constitutionality of the act of Assembly*, and upon the decision of that question was to rest the decision of the case; that is to say, if the law should be pronounced constitutional, then the judgment in favor of the plaintiff was to stand, but if it should be pronounced unconstitutional, then the appeal was to be dismissed, and the judgment reversed. The whole difficulty in the case, as it now stands, grows out of the omission of the agreement to confer, *in words*, upon the Court of Appeals (if they should be of opinion the law was unconstitutional) *the right to reverse the judgment*.    But

Miller's Heirs & Terre-tenants, *vs.* State, use of Fiery.

that it was the understanding of the parties that it did confer this power, I have no doubt. Otherwise, the agreement is all one-sided, for, in *any event*, the defendant was to be defeated. *If the law was constitutional, he was to be bound, and also was he to be bound if it should be unconstitutional.* This is the substance of the construction placed on the agreement on the part of the appellee. It is impossible for me to bring my mind to the belief that it ever was the intention of the appellant to enter into an agreement to prosecute an appeal and incur the costs and vexations incident to it, when the *only* result of it could be to defeat his interests. He had a judgment in his favor, *which he insisted upon*, and that, too, so pertinaciously that the plaintiff applied to the Legislature to interfere in its behalf. The defendant denied the right of the Legislature to interfere, *and contested the constitutionality of its action*, and yet we are asked to believe (after all . this) he willingly made an agreement to the effect *that whether or not the law was constitutional, there should be a judgment against him!* There are cases so clear in their nature that the simple statement of them constitutes their clearest illustration, and I think this is such a one. My opinion is, the judgment ought to be stricken out, and the original judgment restored.

Upon this question, however, the court is equally divided in opinion, and, therefore, the ruling of the court below, refusing to strike out the judgment, must be affirmed.

As to the demurrer in the *sci. fa.* case, the court is unanimously of opinion that the defence was not the subject matter of a plea at law, and that the judgment on demurrer was right, a majority of the judges being of the opinion, that as the agreement was designed to prevent the plaintiff from proceeding on his judgment, if the act of Assembly was declared to be void, the defendant is entitled to be discharged in a court of equity, and that relief may now be had against the judgment.

*Judgment affirmed without prejudice.*

( Decided June 25th, 1858.)


ECCLESTON, J.—A majority of the court have expressed an opinion that, by a proceeding in equity, the appellants may be

relieved from the judgment of the appellee against Samuel Miller, rendered at November term 1847. In this view of the subject I do not concur.

It is a well established principle of equity that where equities are equal, and one party has the legal advantage over the other, a court of equity will not interfere by taking away such advantage at law.

Applying this rule to the present controversy, my opinion is, that the appellants are not entitled to relief in a court of equity.

At November term 1843, this case was first tried, when a verdict was given in favor of the defendant, Samuel Miller. A motion was made for a new trial, which motion was over-ruled, at November term 1844, and judgment given for defendant.

The case not having been so conducted on the part of the plaintiff as to give him the benefit of an appeal, as no bills of exceptions on his part had been regularly prepared and signed, he applied to the Legislature for relief in the premises, and the act of 1845, ch. 358, was passed. This act provides, "That the court of Washington county be and the same is hereby authorized and required to grant an appeal in the case heretofore decided by said court, wherein the State of Maryland, use of Lewis Fiery, was plaintiff, and a certain Samuel Miller was defendant; and that the points of law decided, and the instructions given, by the said court, as set forth and contained in an appeal already granted by said court, wherein the said State of Maryland, use of Henry Fiery, was plaintiff, and the said Samuel Miller defendant, and in every way similar to the case first herein mentioned, be set forth and embodied in the record of the appeal herein provided for; *provided,* nevertheless, that the said court shall be satisfied that the plaintiff aforesaid lost his right to appeal in the above case, at the proper and regular time for taking the same, by a misunderstanding of the counsel engaged in the case, in regard to the taking of the said appeal."

Under this act the case was prepared by Washington county court to be sent up to the Court of Appeals. It was not, however, sent up as *thus prepared.* But, by the agreement of the

parties, the judgment of 1844, rendered in favor of the defendant upon the verdict of November term 1843, was stricken out, the cause reinstated upon the docket, and, at November term 1847, a verdict and judgment were rendered in favor of the State, use of Lewis Fiery.

Among other things agreed upon by the parties, it was provided, "That if the proceedings of Washington county court, in signing and sealing the bills of exceptions set forth in said agreement, should be deemed by the Court of Appeals void, in consequence of the unconstitutionality of the act of Assembly by which those bills of exceptions were authorized and directed to be signed and sealed by Washington county court, then the appeal in the case should be dismissed; and that *otherwise*, it should be heard and determined upon the questions of law which were to be raised and decided at the trial of that cause, then about to be tried in Washington county court; which questions were similar to those presented in the case of the State, use of Henry Fiery, vs. said Samuel Miller. And it was further agreed, that the case of Lewis Fiery should abide the result or decision of the Court of Appeals in the case of the State, use of Henry Fiery, vs. Samuel Miller, upon the bills of exceptions of the defendant, which had been taken in the last mentioned case at the term when this agreement was made."

The decision of the Court of Appeals in the case of Henry Fiery, was in his favor, and they affirmed the judgment below. Believing that the act of Assembly referred to in the case of Lewis Fiery was unconstitutional, the appellate tribunal dismissed the appeal, under and by virtue of the provision contained in the agreement. This dismissal of the appeal, as a matter of course, left the judgment of 1847, standing upon the docket of the court below, in favor of Lewis Fiery; and this is the judgment against which the appellants are now wishing to have relief.

They insist, that although the agreement did provide for a dismissal of the appeal, in case the court should decide the special act of Assembly to be unconstitutional, without any express provision in regard to reversing or annulling the judg-

ment of 1847, on which the appeal had been taken, it was, nevertheless, the design of the parties, and the true spirit of the agreement, that if the law should be held to be unconstitutional, the plaintiff's judgment should not be enforced, but become a nullity; the real object of the agreement being to test the constitutionality of the law. And the appellants contend, that only in the event of the law being held constitutional, was it intended that the case of Lewis Fiery should abide and be governed by the result of Henry Fiery's case. The appellee's counsel, however, does not admit this to be a correct view of the matter.

If relief should be sought in equity, it would be proper to look at the circumstances under which the agreement in dispute was made, and it will then appear that the claims of Lewis Fiery and Henry, his brother, were precisely alike, in principle. In Henry's case bills of exceptions were taken, and, finally, he succeeded in recovering his claim; the verdict and judgment, at the last trial below, were in his favor, and the judgment was affirmed in the Court of Appeals. During the progress of the trial in the case of Lewis, no bills of exceptions were prepared. This, as alleged by his counsel, was the result of a belief that it had been agreed and understood that the exceptions should be prepared after the trial was over. Subsequently, when it was proposed to have the exceptions signed, under the alleged previous understanding, the counsel for the defendant objected, upon the ground that he had no recollection of such an agreement. In consequence of this alleged misunderstanding, the act of 1845, ch. 358, was passed by the Legislature, for the purpose of allowing Washington county court to grant an appeal.

A rule was laid on Miller to show cause why this act should not be carried into effect, which rule he answered and resisted. Affidavits on the subject were filed on both sides, and upon the consideration of them, the court being of the opinion that *the points of law* decided, and the *instructions given*, in the cause of the State, use of Henry Fiery, against S. Miller, were *substantially the same* as those decided in the case of Lewis Fiery against the same defendant, and that *Lewis had*

*lost his right to appeal,* at the proper time for taking the same, by a *misunderstanding of the counsel* in the case; bills of exceptions were signed by the court, and the cause ordered to be sent up to the Court of Appeals, in compliance with the said act.

After these bills were signed, and the cause ordered to be sent up, the agreement to reinstate the case of Lewis for a new trial, was entered into, by which the necessity of taking the case to the Court of Appeals by the plaintiff, under the proceedings directed by the act of Assembly, was dispensed with. The motive for this was to avoid unnecessary expense and delay, knowing, as the parties by that time did, how those exceptions would be decided, inasmuch as the same exceptions had then been decided upon by the appellate court on the first appeal in Henry's case, and in his favor. And the agreement so arranged the case of Lewis that, instead of the plaintiff being the appellant, as provided by the act of Assembly, it was made necessary for the defendant to appeal. Of course, when his appeal was dismissed, the judgment appealed from was left in full force at law against him.

Under the circumstances, it would seem to be very evident that, but for the misunderstanding between the counsel, bills of exceptions would have been regularly taken in Lewis' case, on the trial in 1843; and, if so, judging from the result in Henry's case, and the precise similarity of his claim to that of Lewis, it is a fair and reasonable inference that the claim of the latter would have been established. I, therefore, am of the opinion that a court of equity should not grant relief to the appellants.

Whatever may have been the intention of the agreement, it is certainly true that it has been before the former, as well as the present, Court of Appeals, and it has not, as yet, had the effect to reverse, strike out, annul, or enjoin the judgment. But it is said the appellants may now be relieved from it by a court of equity. Should there be a proceeding in equity for that purpose, it would not only bring before the court the construction of the agreement, but also *the circumstances which* led to its execution, including, likewise, the nature and char-

acter of the appellee's claim, on which his suit was instituted. He yet has the judgment at law, and if the equities of the parties were equal, a court of equity would not annul or enjoin his judgment. And, moreover, in view of all the circumstances, I think the equities are in his favor.