W. R. GLASGOW, Adm'r. of BROWNING, *vs.* J. SANDS, Trustee of BAILEY—*December,* 1830.

The Commissioners of Insolvent Debtors for the city and county of *Baltimore,* after having appointed a permanent trustee, and certified to *Baltimore* County Court, that the debtor hath *not* complied with the terms and conditions of the insolvent laws, may, upon the neglect of such trustee to give bond within a reasonable time, appoint a new permanent trustee.

The *choses in action* of a deceased wife, vest in the trustee of her surviving husband, on his application for a discharge under the insolvent laws, although the husband is reported against, and does not obtain a final release.

APPEAL from a decree of the Orphans Court of *Baltimore* County.

*John Sands,* as permanent trustee of *George W. Bailey,* filed his petition in the Orphans Court of *Baltimore* County, to recover from the appellant a sum of money which he alleged was due to *Bailey* prior to his insolvency, from *Browning's* estate. The following statement, exhibits the whole case:

"It is admitted that *William R. Glasgow* was, on the 8th September, 1826, appointed by the Orphans Court of *Baltimore* County, administrator d. b. n. c. t. a. of *P. G. Browning,* then deceased; that on the 21st of September, 1826, *Glasgow,* as administrator, settled an account of his administration by which he was indebted to the said deceased's estate the sum of $1532:82; that *Mary Ann Browning,* daughter of said *P. G. B.* became and was entitled under the will of her father, to one-sixth part of the said balance, being the sum of $255:40⅓; that said *M. A. B.* was, after the death of her father, lawfully married to a certain *George W. Bailey;* that before payment of any part of the said sum of $255:40⅓, she departed this life; that after the death of his wife and before payment of the said sum of $255:40⅓ or any part thereof, and on the 7th December, 1826, *G. W. B.* then a resident of the city of *Baltimore,* applied to *the Commissioners of Insolvent Debtors in and for the city and*

*county of Baltimore*, for the benefit of the Insolvent Laws, and obtained a personal discharge, and on the same day, the said *John Sands* was appointed by the said commissioners, provisional trustee of the said *G. W. B.* and as such gave bond with security; that on the 15th January, 1827, a certain *Ritson Browning* was appointed by the said commissioners, the permanent trustee of the said *G. W. B.* but never gave bond as such permanent trustee, and no deed of assignment was executed by said *John Sands* to said *R. B.*; that on the 21st day of April, 1827, the said commissioners made the following report:—"In the case of *George W. Bailey*, an applicant for the benefit of the insolvent laws of *Maryland*, the undersigned commissioners of insolvent debtors for the city and county of *Baltimore*, in pursuance of the act of Assembly, do report to *Baltimore* County Court, that having diligently inquired and examined into the nature and circumstances of the said application, it appears, upon such examination, that the said *Baily* hath *not* complied with the terms and conditions of the said insolvent laws, and hath *not* acted fairly and *bona fide;* and the said commissioners now return to the office of the clerk of the said court, there to be recorded, the schedule, and all the proceedings which have been had before them in the matter of the said application. Given under our hands this 21st April, 1827, &c."

It is further admitted, that on the 10th of May, 1828, the said *John Sands*, who was recommended by a majority of the creditors of the said *G. W. B.* was appointed by the said commissioners the permanent trustee of the said *G. W. B.*, and as such gave bond, with security, which security was approved of by the said commissioners, and a copy of which bond is as follows, &c. "That after the application to the said commissioners of the said *G. W. B.*, and on the 14th February, 1827, *Bailey* executed and delivered a release to *Glasgow*, in consideration of $50, of his claim in right of his wife, under her father's will. That at the time the said *G. W. B.* signed the release, there was written on

the same, and signed by *William T. Browning*, a memorandum, guaranteeing the said *Glasgow*, from any claim from *R. B.* as trustee of *Bailey*. It is further admitted that the release, together with the memorandum thereon, was delivered to *W. R. G.* on the day it bears date, and that *W. R. G.* then knew that *G. W. B.* had applied for the benefit of the insolvent laws, and was informed by *Bailey* that he intended to withdraw his application, which was in fact never done."

Upon the foregoing statement of facts, the parties, *John Sands* and *William R. Glasgow*, pray the opinion of the Orphans Court of *Baltimore* county, as to the right of said *W. R. G.* to be allowed in the settlement of his second account with the Orphans Court, the sum of $255 40⅓, as so much money paid by him to said *G. W. B.*, and as to the right of said *John Sands* to a decree or order, directing the said *W. R. G.* to pay over to him the said *J. S.* the sum of $255 40⅓, with interest from the 21st day of September, in the year 1826.

The Orphans Court thereupon passed the following decree:

"The court having considered the petition, the answer thereto, and the statement of facts filed in the cause by the counsel of the parties, is of the opinion that the said *William R. Glasgow*, as administrator, is not entitled to a credit in his administration account, for the proportion of *Mary Ann*, the daughter of the said deceased, and who intermarried with *George W. Bailey*, and for which proportion the said *Glasgow* now claims to be allowed the sum of $255 40⅓, as paid or satisfied to the said *George W. Bailey ;* the court being of the opinion, that inasmuch as it is admitted that no part of the same was paid by the said *Glasgow*, before the said *Bailey* applied for the benefit of the insolvent laws of this *State*, and had a trustee appointed, and that said *Glasgow* had information that said *Bailey* had thus applied for the benefit of the insolvent laws, that said *Glasgow* ought not to have paid any part of the same to the said *Bai-*

*ley.* It is therefore on this ninth day of February, 1829, ordered and decreed, that *William R. Glasgow,* administrator *de bonis non,* &c. of *Peregrine G. Browning,* deceased, pay to *John Sands,* trustee of the said *George W. Bailey,* the sum of $255 40⅓, being his proportion of the personal estate of the said deceased, in right of his wife, *Mary Ann;* and that he also pay costs."

From this decree *Glasgow* appealed to this court.

This cause was argued before BUCHANAN, Ch. J., STEPHEN, and DORSEY, J.

*Williamson,* for the *appellant,* contended,

That after the commissioners of insolvency in and for the city and county of *Baltimore,* have made a report, upon the application of an insolvent debtor, for the benefit of the insolvent laws of the State of *Maryland,* to Baltimore County Court, they are divested of all power over the application and proceedings of the insolvent debtor, and cannot, therefore, appoint a permanent trustee, after such report; and having no authority to appoint the trustee, *John Sands* is not in fact, permanent trustee, and cannot therefore, act as such. That the distributive share of *Browning's* estate, to which *Bailey* was entitled in right of his wife, was a *chose in action,* could not be, and was not assigned to the provisional trustee. It was not *Bailey's* property till reduced into possession. The provisional trustee had no right to reduce it into possession, *Bailey* being then the only person who could reduce it into possession, and having reduced it into possession for valuable consideration received from the administrator—the administrator should not be made to pay the amount to the trustee appointed after the execution of the release from *Bailey* to the administrator.

*He cited* 1816, *ch.* 221, *sec.* 2. 3.    1798, *ch.* 101, *sub.* 5, *sec.* 8.  *Brown vs. Brice,* 2 *Harr. and Gill,* 24.  *Leadenham vs. Nicholson,* 1 *Ib.* 278.    *State vs. Krebs and Warner,* 6. *Harr. and Johns.* 34.

*Gill* for the appellee, *cited Schuyler vs. Hoyle, 5 John, C R.* 206. *Stewart vs. Stewart,* 7 *Ib.* 247. *Hurt vs. Fisher,* 1 *Harr. and Gill,* 96. 2. *Madd,* 636. *Mitford vs. Mitford,* 9 *Ves. Jr.* 87. 2 *Atk.* 544. *Act of* 1819, *ch.* 84, *sec.* 1, 6. 1805, *ch.* 110, *sec.* 4.

Dorsey, J., delivered the opinion of the court.

By the argument in this case, two questions have been presented for our determination. *First*—whether the commissioners of insolvent debtors for the city and county of *Baltimore,* after having appointed a permanent trustee, and certified to *Baltimore* County Court that the applicant hath *not* complied with the terms and conditions of the insolvent laws, can, upon the neglect of such trustee to give the requisite bond within a reasonable time, appoint a new trustee? *Secondly;* whether a *chose in action* of a deceased wife is vested in the trustee of her surviving husband, an insolvent petitioner? By the act of 1816, which provides for the appointment of these commissioners of insolvency, applications for the benefit of the insolvent laws were made to *Baltimore* County Court, who referred them to the commissioners, who, after proceeding to the appointment, first, of a provisional, and then of a permanent trustee, were required to examine into the nature and circumstances of all such applications, and if, upon such examination, it appeared that the petitioner had complied with the terms and conditions of the insolvent laws, and had acted fairly and *bona fide,* they were to report the same to *Baltimore* County Court, "and return the schedule and all proceedings which may have been had before them, to the office of the clerk of *Baltimore* County Court, there to be recorded." Under this law, the County Court were authorized to grant either a personal or final discharge to the petitioner: and if the examination by the commissioners resulted unfavorably to the applicant, no report thereof was to be made to the County Court, nor the schedule, or any of the proceedings before the commissioners returned.

With a view to relieve *Baltimore* County Court from many of the duties connected with applications for releases under our insolvent laws, to which it was still subject, the Legislature passed the act of 1819, *ch.* 84, investing the commissioners with the power of granting personal discharges, directing all applications of insolvents to be presented to them, instead of the County Court, and transferring to them all the powers of Baltimore County Court, or the judges thereof, in relation to such application, except the granting of final discharges and trying allegations, &c. It also enjoins the commissioners, " in case it shall appear to them that the applicant hath not complied with the terms and conditions of the insolvent laws, to certify the same to *Baltimore* County Court, and also to transmit to the clerk thereof, all deeds of assignment executed by any such applicant, or applicants, and all such other papers relating to the estate of such applicant or applicants, and brought before them as they may deem it proper to have preserved and recorded." But it does not require, as in the case of their favorable report, a return of the schedule and all proceedings which may have been had before them. These, when their report is unfavorable to the applicant, remain in their custody, in order that they may comply with the injunction in the 6th *sec.* of the act of 1819, which declares that "when the report of the commissioners shall be unfavorable to the applicant or applicants, the said commissioners shall cause the trustee to proceed in the execution of the trust, in the same manner, and subject to the same rules, regulations, and restrictions, as if the report of the said commissioners, had been favorable to such applicant or applicants. By the 4th *sec.* of the act of 1805, *ch.* 110, which this court has said is part of the insolvent system, applicable as well to *Baltimore* city and county, as to the rest of the *State of Maryland*, the trustee before he proceeds to act, shall give bond to the *State of Maryland*, for the use of the creditors of the petitioning debtor, in such penalty as the County Court shall direct, and upon his "neglect to give bond

as aforesaid in a reasonable time, to be judged of by the County Court," the County Court shall appoint such person as they shall think proper, in his place, who shall give bond as aforesaid." Upon viewing these several acts of assembly in connexion with each other, we think that the commissioners were authorized, under the circumstances in which they did so, to appoint *John Sands* the permanent trustee of *Bailey*, and to take bond from him as such. That the commissioners are invested with the power in the first instance, of appointing a permanent trustee, is obvious from the 3d *sec.* of the act of 1816, and the act of 1820, *ch.* 182 ; and by adverting to the 4th *sec.* of the act 1805, and the 1st and 6th *sections* of the act of 1819, we deem it equally clear, that they acted within the scope of their powers in making the appointment objected to in the case before us. The schedule of the petitioner in legal contemplation remained with the commissioners, and they only, perhaps, could therefore properly direct the penalty of the bond to be given by the trustee. By the act of 1819, their investiture with all the powers of *Baltimore* County Court, is as full and comprehensive as language could make it, and the peculiar and exclusive fitness of the commissioners for the discharge of the duty which they have assumed in this case, leaves no doubt in our minds of the legality or propriety of its exercise. Had the County Court have made the appointment, having no knowledge of the amount of debts due from or to the petitioner, or the value of his property, they would have had nothing to guide them in prescribing the penalty of the trustees' bond, which by law, it would be their duty to direct. Against the exercise of the power by the commissioners, no solid objection has been urged. 'Tis true in this case the schedule and all the proceedings before them, were returned to the clerk of the *Baltimore* County Court, to be recorded. But this does not vary the general principle applicable to like cases ; it was done in obedience to no mandate of the law, in contemplation of

which the schedule and their proceedings were still in their custody.

In our present decision, we mean to intimate no opinion as to the power of the commissioners to make an appointment like the present, where their report to the County Court has been in favor of the insolvent debtor, and the schedule and all their proceedings returned therewith.

The second question we deem too clear to require either authority or illustration to sustain our opinion upon it. By the act of 1798, *ch.* 101, *sub-ch.* 5, *sec.* 8, it is enacted that "if the intestate be a married woman, it shall not, as heretofore, be necessary for her husband to take out letters of administration, but all her *choses in action* shall devolve upon her husband, in the same manner as if he had taken out such letters." Under the provision of the act of assembly, *Bailey* might have collected the claim now in controversy, and have applied the same to his own use ; he was competent to release, compromise, assign or dispose of it, in any way he might see fit ; and to all the purposes of this controversy, it is to be regarded in the same light as if it were a debt or *chose in action,* due to *Bailey* himself, and consequently vested in the appellee upon his giving bond as required by law. The statutory assignment of the petitioner's estate, is of all property which he has a claim, title to, or interest in, and of all debts, rights and claims, which he has, or is in any way entitled to.

DECREE AFFIRMED.