## STATE OF MARYLAND, use of ELDER, GELSTON & Co., vs. JOHN G. REANEY, Adm'r of JOHN T. BARBER of JOHN.

The enlistment of an applicant for the benefit of the insolvent laws, as a volunteer in the Mexican war, and his acceptance by the Government of the United States as such, does not relieve him from responsibility to appear before the commissioners of insolvent debtors, according to the condition of his appearance bond, nor relieve his surety on such bond for his failure to appear.

It is no defence to a *scire facias* against bail, that their principal had enlisted into the army of the United States since their becoming bail for him, and before judgment against him in the principal action.

The act of 1845, ch. 139, sec. 1, in relation to a second application for the benefit of the insolvent laws, does not apply to the city of Baltimore; and the act of 1819, ch. 84, sec. 4, only prohibits a second application within two years, where the insolvent had failed to obtain a final discharge under the previous application.

A debt was due by a party who applied for the benefit of the insolvent laws, and pending this application, and before final discharge, an *absolute* judgment was recovered against him on the debt. HELD:

That it was competent for the applicant to have pleaded the pendency of his application in the original action against him on the debt, and having failed to do so, he cannot thereafter take advantage of it in any other suit.

Under the act of 1831, ch. 316, the commissioners of insolvent debtors, in the city of Baltimore, have power to extend the time for the final hearing of an insolvent, notwithstanding a previous unfavorable report made by them to the county court.

In pleading such extension of time, by the commissioners, to an action on the applicant's appearance bond, it is sufficient to allege that they did so enlarge the time, and that under such proceedings the applicant was finally discharged; it is not necessary to allege that continuances were properly entered, nor that notice was given; the legal presumption is, that the proceedings of the commissioners were regular and conformable to law.

Where suit is brought on an appearance bond *after* breach of its condition, and *before* the subsequent action of the commissioners extending the time and granting a final discharge, such subsequent action is a defence arising after suit brought, and not a complete bar to the action, but when pleaded exempts the defendant from liability, except for nominal damages.

APPEAL from the Superior Court of Baltimore city.

*Debt* brought in the name of the State for the use of Basil

State, use of Elder, Gelston & Co., vs. Reaney, Adm'r of Barber.

'T. Elder and others, creditors of Richard W. Reaney, an applicant for the benefit of the insolvent laws, against the appellee, upon a bond given by the said applicant conditioned for his appearance before the commissioners of insolvent debtors for the city and county of Baltimore, upon which bond the defendant's intestate was surety.

The bond is dated the 25th of April 1846, and is conditioned for the appearance of the said applicant before the commissioners, on the 1st of June then next, to answer interrogatories, and to appear before them for final hearing, on the 1st of August then next.

The suit was brought on the 4th of January 1848, and the declaration alleges, that the said Reaney, before, and at the time of his application, to wit, on the 26th of July 1845, was indebted to the said parties for whose use the suit is brought, in the sum of $513.98, and that for the recovery thereof they instituted suit in Baltimore county court, and recovered judgment therefor at January term 1846 of said court, which judgment still remains due and unpaid, and the breach of the bond relied on is, that said Reaney did not appear before the commissioners on the 1st of August next after its execution, according to the condition thereof.

The defendant pleaded several pleas, the 3rd, 4th, 5th and 6th of which only need be stated, the others having been abandoned in the court below and in this court.

The 3rd plea alleges, that the insolvent, Reaney, volunteered for the Mexican war, on the 30th of May 1846, and was accepted by the Government of the United States, and served until the 30th of June 1847. To this plea the plaintiffs demurred generally.

The 4th plea alleges, that Reaney applied for the benefit of the insolvent laws on the 25th of April 1846, and that on the 23rd of February 1848, the time for his appearance was extended to the 3rd of June 1848, when he appeared and was discharged. To this plea the plaintiffs *replied*, that when Reaney applied, the 1st of August 1846 was appointed for him to appear, and he did not, and the commissioners then made a final and unfavorable report in his case, *absque hoc* that the

State, use of Elder, Gelston & Co., *vs.* Reaney, Adm'r of Barber.

time was afterwards extended. The defendant *rejoined,* that the commissioners did change the time for his appearance on the 23rd of February 1848. To this rejoinder the plaintiffs demurred generally.

The 5th plea alleges, that Reaney applied on the 13th of August 1845 and was discharged, and that afterwards, and within two years, to wit, on the 25th of April 1846, he applied again, and that the bond sued on was given on his second application. To this plea the plaintiffs demurred generally.

The 6th plea alleges, that before the bond sued on was given, to wit, on the 13th of August 1845, Reaney applied, and was discharged on the 8th of January 1846, and that the debt due the plaintiffs was due them before that application, and consequently became discharged. To this plea the plaintiffs *replied,* that the judgment on which they claim was rendered against Reaney after his application of the 13th of August 1845, to wit, on the 6th of January 1846, and that said judgment is absolute and not subject to the release under said application. To this replication the defendant demurred generally.

The court, (Lee, J.,) by agreement of counsel, entered a *pro forma* judgment on these demurrers in favor of the defendant, and the plaintiffs appealed.

The cause was argued before Le Grand, C. J., Eccleston and Bartol, J.

*T. P. Scott* for the appellant.

1st. The appellants insist, they are entitled to judgment on the issue presented under the third plea, because the act of 1846, ch. 332, did not pass until the 10th of March 1847, after default made by Reaney in not appearing on the 1st of August 1846, according to the terms of the bond, when the appellants' right to sue vested; (2 *Gill,* 79, *State vs. Burke.* 8 *Md. Rep.,* 551, *Wilderman vs. Mayor & C. C. of Balto.;*) and because the act of Reaney in enlisting was his own *voluntary* act, and not the act of God or the compulsory act of the Government, which could no more exonerate the sureties on his bond, than his leaving the country of his own will.

State, use of Elder, Gelston & Co., *vs.* Reaney, Adm'r of Barber.

2nd. The appellants insist they are entitled to judgment on the issue presented under the fourth plea, because after the final report and refusal · to grant Reaney a discharge, on the 1st of August 1846, and after the lapse of the term of the court to which the report was made, the commissioners of insolvent debtors had no authority to open the case on the 23rd of February 1848, (after this suit was brought,) and grant further time to Reaney to appear.  *Acts of* 1819, *ch.* 84, *secs.* 1, 4. 1821, *ch.* 250.  1831, *ch.* 316, *secs.* 2, 3, 4.  2 *H. & G.,* 374, 379, *Munnikuyson vs. Dorsett.*  1 *Gill,* 381, *Boarman vs. Israel.*  8 *Md. Rep.,* 95, *State, use of Sprigg, vs. Jones.* 1 *G. & J.,* 249, *Kiersted vs. The State.*   10 *G. & J.,* 1, *Osbourne vs. The State.*

3rd. The appellants insist they are entitled to judgment on the issue presented under the fifth plea, 1st, because even if the second application of Reaney for the benefit of the insolvent laws was unlawful, which is not admitted, yet the bond is good, Reaney having been thereby relieved from imprisonment; 2nd, because there is no law prohibiting a second application within two years, in such a case as this.   The second application in this case was made before the act of 1845, ch. 139 went into effect, even if that · act applies to insolvent applications in the city of Baltimore, which is denied, and the 4th sec. of the act of 1819, ch. 84, prohibits a second application within two years only in case the petitioner *had failed* to obtain a *final discharge* under the first application, which is not the present case; and, moreover, the applicant cannot take advantage of his own wrong.

4th. The appellants also insist they are entitled to judgment on the issue presented under the sixth plea, 1st, because if Reaney had a defence under his discharge upon his first application, he should have plead it to the appellants' suit against him; and 2nd, because having suffered an absolute judgment to go against him, he cannot now avail himself of any defence which he might then have had.   6 *Md. Rep.,* 305, *Kemp vs. Cook.*   *Ibid,* 444, *Moore vs. Garrettson.*   12 *Md. Rep.,* 227, *Miller vs. Fiery.*

30      v. 13.

*Levin Gale* for the appellee:

1st. The demurrer to the third plea raises the question, whether an enlistment in time of war relieves a party from responsibility to appear according to the exigency of his bond. The appellee insists that it does, especially since the act of 1834, ch. 336, which assimilated these bonds to bail bonds, (2 *Gill,* 79, *State vs. Burke,*) where the surety is relieved from his responsibility whenever anything occurs which places it beyond his power to arrest and surrender his principal, and that is exactly the present case, for no civil process can detain a soldier whether he volunteers or not, provided the Government holds on to and claims him.

2nd. On the issues growing out of the fourth plea, the appellee insists, that under the acts referred to by the appellant and the act of 1836, ch. 293, the commissioners had jurisdiction to extend the time of the insolvent to appear, and having extended the time and discharged the insolvent, their judgment, unreversed, is conclusive when brought into issue in this cause. 1 *Gill,* 214, *Bowie vs. Jones.* See also the *Acts of* 1822, *ch.* 102; 1829, *ch.* 208; 1845, *ch.* 349, *sec.* 2.

3rd. The insolvent having applied within two years before the application upon which this bond was given, his second application was void, and it was, therefore, unnecessary for him to appear, and hence the appearance bond was void. *Acts of* 1819, *ch.* 84, *sec.* 1, and 1845, *ch.* 139, *sec.* 1. This suit is not against the insolvent but his surety, and there is no objection to the surety making this defence, nor even to the insolvent doing so himself, since his application being void the commissioners should not have recorded or recognized his appearance. 11 *Md. Rep.,* 322, *Tucker vs. The State.* The issues growing out of the fifth plea must therefore be decided in favor of the appellee.

4th. As to the issues arising out of the sixth plea, the appellee insists that the claim of the appellants against Reaney was discharged under his application in 1845, and they were not, therefore, competent to sue for any default made by Reaney under his application made in April 1846, and that the judgment obtained on the 6th of January 1846, being obtained

*before* the discharge and pending his application, does not preclude the parties from now pleading the same. The discharge could not have been pleaded to that suit, because it was not obtained till *after* the judgment was recovered.

BARTOL, J., delivered the opinion of this court.

This is an action instituted by the appellant on the bond of an insolvent debtor, conditioned for his appearance before the commissioners; on which bond Barber, the defendant's intestate, was surety. The questions arise solely on the pleadings, all of which present issues of law. By agreement of counsel a judgment *pro forma* was entered on the demurrers for the defendant, from which this appeal was prosecuted.

The suit was instituted on the 4th day of January 1848, and it appears from the declaration and oyer, that a certain Richard W. Reaney, on the 25th day of April 1846, applied to the commissioners of insolvent debtors in the city of Baltimore, for the benefit of the insolvent laws, and the bond upon which this action was instituted, was executed by said Reaney, and by the appellee's intestate, upon the conditions, that the said insolvent debtor, should make his personal appearance before the said commissioners, on the 1st day of June 1846, to answer interrogatories, &c., and should also make his personal appearance before said commissioners, on the 1st day of August 1846, for his final hearing, &c. It is further alleged, that the said Richard, at the time of his application, was indebted to the appellants in the sum of $513.98, upon a judgment before recovered against him, and the breach of the condition of the bond relied on, is, that the said Richard did not make his personal appearance before the commissioners, on the 1st day of August 1846, &c.

The defendant pleaded seven pleas, the second and seventh were withdrawn in the court below, and the first was abandoned in this court; the appellee relying for his defence, upon the matters arising under the 3rd, 4th, 5th and 6th pleas.

The demurrer to the 3rd plea raises the question, whether the enlistment of the insolvent as a volunteer, and his acceptance by the Government in its service in time of war, relieved

him from responsibility to appear according to the condition of the bond, or relieved his surety from liability for his failure to appear; and we think this question must be ruled against the defendant. The act of 1846, ch. 332, was not passed until the 10th day of March 1847, long after the breach of the condition of the bond, and, therefore, has no application to the case; and we did not understand the appellee in his argument, as claiming exemption under the act of 1846. But he argued, that since the act of 1834, ch. 336, which placed these bonds on the footing of bail bonds, giving to the surety the power to surrender the insolvent, the surety is relieved from his responsibility wherever any thing occurs which places it beyond his power to arrest and surrender the principal. This argument rests upon the assumption, that the enlistment of Reaney, exempted him from arrest and placed him out of the surety's power. Admitting that proposition to be true, without meaning so to decide, it was the consequence of Reaney's voluntary act, and not of any constraint on the part of the government, and could no more exempt him from responsibility on his bond, or relieve his surety, than if he had voluntarily absented himself from the State for any other purpose.

No authorities have been cited in support of the defence set up by the 3rd plea. It was expressly decided by the Supreme Court of Massachusetts, in the case of *Sayward vs. Conant*, 11 *Mass.*, 146, "That it was no defence to a *scire facias* against bail, that their principal had enlisted into the Army of the United States, since their becoming bail for him, and before judgment against him in the principal action;" and that decision is in conformity with the authorities.

By the fifth plea it is alleged, that Reaney had applied for the benefit on the 13th of August 1845, and was finally discharged, and that afterwards, and within two years, to wit, on the 25th of April 1846, he applied again, and that the bond sued on was given on his second application.

This is not a good plea; it is based upon the supposition, that the second application was illegal. Without intending to decide, that if the second application was illegal it would furnish a good defence to a suit on the bond, we have seen no

DECEMBER TERM, 1858.    237

State, use of Elder, Gelston & Co., vs. Reaney, Adm'r of Barber.

law which prohibited such second application. The act of 1845, ch. 139, sec. 1, in our opinion does not apply to insolvent applications in the city of Baltimore. But even if it did, it did not go into operation till the 1st of June 1846, after the second application of Reaney. The 4th section of the act of 1819, ch. 84, which was also cited by the appellee, prohibits a second application within two years, only in the case where the petitioner had failed to obtain a final discharge under the previous application.

The defendant's demurrer to the replication to the 6th plea, raises the question, whether, if a debt be due by a party and he apply for the benefit of the insolvent laws, and pending the application and before final discharge, an absolute judgment be recovered thereon against him, said judgment is affected by, or subject to his subsequent final discharge on said application; said application not having been in any manner pleaded or relied upon in the suit?

The principle is well settled, that after judgment the defendant cannot avail himself of any matter which might have been pleaded or relied on as a defence to the action. See *Kemp vs. Cook, et al.*, 6 *Md. Rep.*, 305. *Moore vs. Garretson, Ibid*, 444. *Miller vs. Fiery*, 12 *Md. Rep.*, 207. In this latter case it was held, that on a *scire facias*, a defendant could not plead his discharge under the insolvent laws granted prior to the original judgment. The same principle applies to the defence set up here, under the 6th plea. It was competent for Reaney to plead his application for the benefit of the insolvent laws, and the pendency thereof in the original action against him; and although such a plea would not have been a complete bar to the action, nor would it have abated the writ, yet it would have prevented the recovery of an absolute judgment against him, and reduced it to a qualified judgment; subject to the result of his application. Not having availed himself of such a defence at the proper time, and the judgment in this case being absolute and unconditional, it is too late afterwards to make the objection.

There remains only for us to consider the defence arising under the 4th plea. By this plea it is alleged, that Reaney ap-

plied for the benefit of the insolvent laws, on the 25th of April 1846. That afterwards, to wit, on the 23rd of February 1848, the commissioners changed the time for his final appearance, and extended it till the 3rd day of June 1848, and that such proceedings were had under said application, that said Reaney was afterwards, on the 10th day of July 1848, finally discharged, &c.

To this plea the plaintiff replied, that when Reaney applied for the benefit, the 1st day of August 1846 was appointed for him to appear, and he did not, and that the commissioners of insolvent debtors then made, to the county court, a final and unfavorable report in his case, *absque hoc*, that the time was afterwards extended, &c.

The defendant rejoined, that the commissioners did, on the 23rd of February 1848, change the time for the final appearance until the 3rd day of June 1848, &c., and to this the plaintiff demurred generally.

The decision of the question raised by this demurrer, depends upon the construction of the acts of Assembly, defining the powers and duties of the commissioners of insolvent debtors.

The act of 1819, ch. 84, sec. 1, directed the application to be made to the commissioners, and authorized them to grant a personal discharge, and to fix the time for final hearing, which was to be before the county court. They were also required to report to the county court, whether the petitioner had complied, or had not complied, with the terms and conditions of the insolvent laws. The act of 1821, ch. 250, provided, that in cases where the insolvent may fail to appear on the days required by law, the commissioners, or the county court, as the case may be, shall have power, in their discretion, if they believe such failure not to have been designed for fraudulent purposes, to continue the case of such petitioner upon their docket until some other convenient day, whereof notice is to be given.

The act of 1831, ch. 316, greatly enlarged the powers of the commissioners; by the 3rd section they were authorized to hear finally, and to grant a final discharge to, the petitioner;

and by the same section it is enacted, "That the said commissioners shall have the same power and discretion of extending and changing the time for such final appearance, as is now vested in said (Baltimore county) court, and under the same limitations, and to the same effect and operation to every intent and purpose."

By the 4th section, the commissioners are required, notwithstanding their power in respect to final discharges, to report and return to the county court, after such final discharge, or unfavorable decision, all their proceedings, and the papers in the case, &c.

And by a proviso to this section, it is declared as follows: "Provided, that when the commissioners shall extend or change the time as aforesaid for final appearance, and shall have made report and return, as aforesaid, to Baltimore county court, the said commissioners may thereafter grant a final discharge as aforesaid, or otherwise proceed to every effect, as if such report and return had not been made, and shall make, report and return of such further proceedings," &c.

Under this proviso, we entertain no doubt of the power of the commissioners, to extend the time for the final hearing of an insolvent; notwithstanding a previous unfavorable report made by them to the county court. They still retain jurisdiction over the case, and by the express words of the act may *"thereafter grant a final discharge, or otherwise proceed, to every effect, as if such report and return had not been made."* It is erroneous to suppose, that after such report none of the papers remain in their possession. The late Court of Appeals, in construing the act of 1819, ch. 84, decided, that "the commissioners in the case of an unfavorable report, were required to return to the county court, only deeds of assignment and such other papers, relating to the estate of the applicant, and brought before them, as they may deem it proper to have preserved; and that they were not required to return the schedule and all other proceedings which may have been had before them; these last remain in their custody." *Glasgow vs. Sands,* 3 *G. & J.,* 96.

In our opinion, the law in this respect remains unaltered by

the 4th section of the act of 1831, which required, in case of an unfavorable report, all their proceedings and the papers in the case of the insolvent debtor, to be returned, "*as such proceedings and papers are now required to be reported and returned.*"

The commissioners having retained the custody of the papers in the case, with jurisdiction over the subject, and power to enlarge the time for the insolvent to appear, the allegation, that they did so enlarge the time, and that thereupon such proceedings were had, as that the insolvent was afterwards finally discharged, is sufficient. It was not necessary to allege, that continuances were properly entered, nor that notice was given; the legal presumption is, that their proceedings were regular and conformable to law. *Bowie vs. Jones,* 1 *Gill,* 208.

It was contended by the appellant, that, upon the failure of the insolvent to appear, according to the condition of the bond, the right of the plaintiff to sue attached, and could not be divested by any subsequent act of the commissioners, and the cases of *Kiersted vs. The State,* 1 *G. & J.,* 231, and *Osbourne vs. The State,* 10 *G. & J.,* 1, have been cited to show, not only that by such failure the right of action accrued, but also, that the measure of damages is the amount of the debt due the plaintiff.

Those cases arose before the passage of the act of 1836, ch. 293, which gave to the county courts the power to extend the time for the insolvent to appear. That power, we have shown, was possessed by the commissioners under the act of 1831. The exercise of such a power by the court or the commissioners, must necessarily alter the extent of responsibility upon the bond, for if the right of action attaches upon the failure to appear, and the creditors have thereupon a right to recover the full amount of their demands, no benefit whatever could accrue to the insolvent from an enlargement of the time.

In this case the suit was brought after the breach of the condition, and before the subsequent action of the commissioners, as set up in the 4th plea. The plaintiff had a right of action at the time the suit was instituted, and the defence under the plea is not a complete bar; it is matter of defence

arising afterwards, and exempts the defendant from liability, except for nominal damages. The judgment below must therefore be reversed, and judgment entered for the appellants for the costs in this suit.

<em>Judgment reversed, and<br>judgment for appellants for costs.</em>